IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FOUROUZA POURKAY,                    :    CIVIL ACTION
                                     :    NO. 06-5539
           Plaintiff,                :
                                     :
     v.                              :
                                     :
CITY OF PHILADELPHIA, et al,         :
                                     :
           Defendant.                :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                            June 23, 2009

I.    BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . - 4 -

II.   LEGAL STANDARD - MOTION FOR SUMMARY JUDGMENT . . . . . - 9 -

III.  ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . - 11 -

      A.   Title VII and PHRA Claims . . . . . . . . . . . - 11 -

           1.   Title VII and PHRA: Statute of Limitations Analysis
                - claims predicated upon acts which occurred prior
                to January 29, 2004
                . . . . . . . . . . . . . . . . . . . . . - 11 -
           2.   Title VII and PHRA: Exhaustion Analysis - race
                discrimination, retaliation, and claims predicated
                upon acts which occurred after August 30, 2006
                . . . . . . . . . . . . . . . . . . . . . - 17 -
           3.   Title VII and PHRA: Substantive Analysis - race,
                national origin, and religious based
                discrimination . . . . . . . . . . . . . . - 23 -

                a.  Failure to Promote . . . . . . . . . . - 25 -

                b.  "In-Basket Examination" . . . . . . . - 27 -

      B.   Civil Rights Violations for Municipal Liability under §
           1983 . . . . . . . . . . . . . . . . . . . . . - 28 -

      C.   First Amendment Retaliation under § 1983   . . - 31 -

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . - 34 -

Plaintiff Fourouza Pourkay ("Pourkay") brings this action against his current employer, City of Philadelphia ("City"), his former supervisor in the Engineering Unit, Michael McCartney, and his former supervisor in the Maintenance Unit, Calvin Davenger, collectively "Defendants," alleging: (1) race, national origin, and religious based discrimination and retaliation in violation of Title VII and the Pennsylvania Human Relations Act ("PHRA"); (2) constitutional violations, pursuant to 42 U.S.C. § 1983; and (3) First Amendment retaliation, pursuant to 42 U.S.C. § 1983.

Defendants have moved for summary judgment on all counts.  Specifically, Defendants argue: (1) Plaintiff failed to exhaust administrative remedies as to his Title VII and PHRA claims predicated upon race discrimination, retaliation, and acts which occurred prior to January 29, 2004 and after August 30, 2006; (2) Plaintiff failed to establish a prima facie case as to his Title VII and PHRA claims predicated upon national origin and religious based discrimination; (3) Plaintiff failed to establish municipal liability for the purposes of his Section 1983 action; and (4) Plaintiff failed to establish that he engaged in protected speech, or was otherwise prevented from exercising his First Amendment rights.[1]

---

[1]     In addition, Defendants contend that Plaintiff's demand for punitive damages must be denied because the City, as a municipality, is immune from punitive damages.  The Court need

The Court finds the following: (1) Plaintiff's Title VII and PHRA claims, predicated upon acts which occurred prior to January 29, 2004, are barred by the Title VII and PHRA statutes of limitations; (2) Plaintiff's Title VII and PHRA claims, predicated upon retaliation and acts which occurred after August 30, 2006, are barred for failure to exhaust these claims at the administrative level; (3) Plaintiff's Title VII and PHRA claims, predicated upon race, national origin, and religious based discrimination, fail on the merits because Plaintiff can not establish a prima facie case of discrimination; (4) Plaintiff's civil rights claims for municipal liability under 42 U.S.C. § 1983 fail because Plaintiff can not establish the existence of a City policy which violated his civil rights; and (5) Plaintiff's First Amendment retaliation claims under 42 U.S.C. § 1983 fail because Plaintiff can not establish that he spoke "as a citizen" when engaging in allegedly protected speech.

For the reasons that follow, Defendants' Motion for Summary Judgment will be granted.

---

not reach the merits of this argument because summary judgment is granted in favor of Defendants.

I.    BACKGROUND[2]

        Plaintiff was born in Iran and follows the Islam
religion.  (Pl.'s Compl. ¶ 16).[3]  On April 8, 1996, Plaintiff was
hired by Defendant City of Philadelphia to work as a mechanical
engineer in the Philadelphia International Airport, under the
supervision of Defendant Michael McCartney.  In this role,
Plaintiff alleges that he experienced numerous acts of
discrimination, including the following:  (a) Defendant McCartney
made disparaging remarks regarding Plaintiff's age, such as "you
cannot teach an old dog new tricks;"[4] (b) an unidentified person
and Airport contractor made fun of his accent on two separate
occasions; (d) Defendant McCartney placed a sign in the bathroom
which read, "if you don't flush your fecal matter, we will send
you to a third-world country . . . ;" and (e) Defendant McCartney
treated Plaintiff differently from other employees by not

---

        [2]    In considering the instant motion, the Court relied
upon either uncontested facts or, if the facts were disputed,
viewed the facts in the light most favorable to Plaintiff.

        [3]    Plaintiff has an extensive educational background.  He
attended college at the Aryamehr University of Technology where
he earned a Bachelor of Science in Mechanical Engineering,
graduate school at the Massachusetts Institute of Technology,
where he earned a Master's Degree in Mechanical Engineering, and
Purdue University, where he earned a Ph.D in Mechanical
Engineering.

        [4]    (Pl.'s Dep. 62:22-63, 65:20-66:17).  At the
administrative level, Plaintiff pursued an age discrimination
claim.  However, Plaintiff does not assert an age discrimination
claim in his Complaint.  (Pl.'s Compl.).

allowing him to use his cellular phone for personal reasons during work hours, requiring him to sign in and out for lunch, and searching through his desk.

In February 1998, Plaintiff was promoted to Mechanical Engineer II, under the supervision of Defendant Calvin Davenger, an engineering specialist who also served as the Airport Assistant Facilities Manager.  Plaintiff contends that Defendant Davenger spoke to him in a condescending manner and treated Caucasian females more favorably.[5]  Plaintiff was appointed to Airport Planner January 29, 2001 where he worked for the Executive Officers under the supervision of Mark Gale. Plaintiff asserts that he was not subject to any discrimination during the time period between this appointment through the end of 2003.

In 2003, Plaintiff took an eligibility test[6] to become an airport engineering project manager ("AEPM"), an EP 25 pay range position involving management of engineering design and

---

[5]    Plaintiff elaborates on this disparate treatment as follows: "I notice that towards white Anglo-Saxon employees, especially female, [Defendant Davenger] had a different tone versus myself, who is of course not white Anglo-Saxon."  (Pl.'s Dep. 130:23-241; 131:1-2).

[6]    The specific eligibility test administered is called the "civil service test."  By Plaintiff's admission, the civil service test is a purely objective, "time and experience examination." (Pl.'s Dep. 147:18-148:6).

construction phases of the Airport's public works projects.[7]
Plaintiff ranked number three on the eligibility test; Defendant
Davenger, an African American, ranked number one; Thomas Joseph,
an engineer of Indian national descent, ranked number two.[8]  In
accordance with these rankings, Defendant Davenger was promoted
to AEPM on August 20, 2003; a few months thereafter, Thomas
Joseph was appointed to a second AEPM position.  On January 13,
2004, Plaintiff was notified by letter that he would not be
appointed to the AEPM position.  Plaintiff challenged his non-
selection as "discriminatory."  Upon investigation, Airport
Director, Charles Isadell determined that the promotion decision
was pursuant to proper procedure and not the product of
discrimination.

On April 13, 2004, when a third AEPM position became
available, Plaintiff was promoted to AEPM in the Planning Unit.
Defendant Davenger,[9] Ms. Derenick-Lopez, the Human Resource
Manager at the time, and Tom Becker, Assistant Director of

---

[7]     Notably, this position is two levels above Plaintiff's
existing EP 23 pay range.

[8]     Mark Coval, the Airport Engineering Manager, confirmed
the accuracy of these rankings and noted that Defendant Davenger
had the most experience in working for the City of Philadelphia,
Mr. Joseph had the second most experience, and Plaintiff had the
least experience.  (Mark Coval's Dep. 80:17-81:5).

[9]     At this time, Defendant Davenger was promoted from AEPM
to the Deputy Director of Aviation Planning and Environmental
Stewardship.  He remains in this position.

Aviation, approved Plaintiff's AEPM promotion.  While Plaintiff's promotion papers were being processed, Defendant McCartney was promoted to Airport Planning and Environmental Services Manager.

In Plaintiff's AEPM capacity, Plaintiff would work in newly promoted Defendant McCartney's unit, and thus it was necessary for the selection committee to consult Defendant McCartney, in his new capacity, before Plaintiff's promotion became final.  Upon consultation, Defendant McCartney opined that the AEPM job description was not suited for the Planning Unit and was more appropriate to the Engineering Unit.  Defendant Davenger and Ms. Derenick-Lopez agreed with Defendant McCartney and informed Plaintiff that he would no longer be offered the AEPM position.  The AEPM position within the Planning Unit was not filled by any other employee.

Upon Defendant McCartney's promotion to Airport Planning Manager in April 2004, Defendant McCartney again became Plaintiff's supervisor and was responsible for overseeing Plaintiff's performance evaluations.  Plaintiff contends that he was subject to discrimination and/or retaliation by Defendants McCartney and Davenger in connection with a performance evaluation he received on September 7, 2004.  The evaluation, prepared by Davenger and signed by McCartney, gave Plaintiff an overall rating of satisfactory, but noted that Plaintiff needed improvement in the areas of initiative and dependability.

- 7 -

Plaintiff was not disciplined, nor was his job in jeopardy, as a result of the evaluation.

Also in 2004, the Airport posted a vacancy for a Design and Construction Project Manager ("DCPM"), an EP 25 project management position which involves the planning and implementation of architectural and/or engineering design and construction phases of specialty projects.  The Airport determined that the DCPM position was more suitable for the Planning Unit than the AEPM position.  To determine eligible candidates for this position, the Airport administered the "In-Basket Examination."[10]  Plaintiff failed this examination in spring of 2004 and consequently was not considered in the June 30, 2004 DCPM list of potential candidates.

Subsequently thereafter, Plaintiff passed the "In Basket Examination" in 2007 and was placed as number 13 on the 2007 DCPM eligible candidates list; he was not appointed to the DCPM position. Plaintiff does not contest his denial of appointment to the DCPM position, but rather argues that the "In-Basket Examination" is discriminatory against foreign born persons who speak English as their second language.

---

[10]    The "In-Basket Examination" is a standard situational exam designed to measure managerial skills.  It is designed by an independent company, Management and Personal Systems, Inc., and measures abilities in the following areas: (1) leadership style and practices; (2) organizational practices/management control; (3) handling priorities and sensitive situations; and (4) managing conflicts.  (Defs' Mot. for Summ. J., ex. 32).

Plaintiff completed a "Charge Questionnaire" with the Philadelphia District Office of the Equal Employment Opportunity Commission ("EEOC") on November 23, 2004.  On January 14, 2005, he dually filed a Charge of Discrimination with the EEOC and Pennsylvania Human Relations Commission ("PHRC").[11]  In this Charge, Plaintiff alleged discrimination based upon religion, national origin, and age and contended that June 16, 2004 was the earliest date of discrimination.  Following an investigation, on August 30, 2006, the EEOC notified Plaintiff that there was insufficient evidence to support his allegations of discrimination; the EEOC issued a Dismissal and Notice of Right to Sue on September 29, 2006.[12]

## II.  LEGAL STANDARD - MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits,

---

[11]    Plaintiff completed a single charge of discrimination. This charge was filed with both the PHRC and the EEOC.

[12]    Following the issuance of his Right to Sue letter, Plaintiff contends that he was subject to further discrimination by Defendants McCartney and Davenger in two ways: (1) Plaintiff was issued a one day suspension on November 10, 2006 as a result of his refusal to comply with Defendant Davenger's directives that he produce minutes of a particular meeting; and (2) Plaintiff was deprived of internet access after an internet usage survey conducted by Defendant McCartney from November 2006 through January 2007 revealed that Plaintiff spent excessive amounts of time on websites that were non-work related.

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact.  Id. at 248-49.  "In considering the evidence, the court should draw all reasonable inferences against the moving party." El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by showing-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof."  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004) (quoting Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001)).  Once the moving party has thus discharged its burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in [Rule 56]--set out specific facts showing a genuine issue for trial."  Fed. R. Civ.

P. 56(e)(2).


III.  ANALYSIS

    A.  <u>Title VII and PHRA Claims</u>

        Defendants aver that Plaintiff's Title VII and PHRA claims predicated upon race discrimination, retaliation, and acts which occurred prior to January 29, 2004 and after August 30, 2006, are precluded by Plaintiff's failure to exhaust administrative remedies.  Defendants' argument is twofold. First, Defendants argue that Plaintiff's Title VII and PHRA claims, predicated upon acts which occurred prior to January 29, 2004, are barred by the Title VII and PHRA statutes of limitations.  Second, Defendants contend that Plaintiff's administrative charges failed to allege race discrimination, retaliation, and those discriminatory acts which occurred after August 30, 2006, and thus Plaintiff has failed to exhaust administrative remedies as to these claims.

        In addition, Defendants aver that Plaintiff's remaining Title VII and PHRA claims alleging national origin and religious discrimination fail because Plaintiff has failed to establish a prima facie case.  The Court considers each argument in turn.


    1.  <u>Title VII and PHRA: Statute of Limitations Analysis</u>

        Title VII and the PHRA protects employees from

discrimination by their employers on the basis of race, color, religion, sex or national origin.  42 U.S.C. § 2000e-2; and 43 P.S. § 951 *et seq.*  In order to pursue a discrimination or retaliation claim under Title VII and the PHRA, the plaintiff must first exhaust administrative remedies under those Acts as follows.[13]  One, pursuant to the PHRA, a plaintiff must file an administrative charge with the PHRC within 180 days of the alleged act of discrimination.  Pa. Stat. Ann. 43 § 959(h).  Two, pursuant to Title VII, a plaintiff must file an administrative charge with the EEOC within 300 days of the alleged act of discrimination, or within thirty days after receiving notice that the state or local agency has terminated the proceedings under state or local law, whichever is earlier.  42 U.S.C.A. § 2000e-5(e)(1).

Before filing a complaint in the District Court, the employee must obtain a "right to sue" letter from the EEOC.  Id. If the agency fails to take action after the 300 day period, the employee may request a "right to sue" letter, and the EEOC must promptly provide one.  Id.

---

[13]    The Third Circuit has recognized that the exhaustion requirement serves two purposes: (1) puts the employer on notice of the complaint and gives the employer the opportunity to take remedial action; and (2) puts the EEOC on notice of the complaint and gives the EEOC the opportunity to fulfill its statutory responsibility to eliminate any alleged unlawful practice by "informal methods of conciliation, conference, and persuasion." Bihler v. Singer Co., 710 F.2d 96, 99 (3d Cir. 1983).

Filing deadlines imposed by both the PHRA and Title VII are strictly construed.  Interpreting the PHRA 180-day filing deadline, the Third Circuit noted that "Pennsylvania courts have strictly interpreted [the PHRA administrative requirements] and repeatedly held that 'persons with claims that are cognizable under the Human Relations Act must avail themselves of the administrative process of the Commission or be barred from the judicial remedies authorized in Section 12(c) of the Act.'" Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997) (quoting Vincent v. Fuller Co., 616 A.2d 969, 974 (Pa. 1992)).  Similarly, the 300 day deadline imposed by Title VII is strictly enforced when the employment actions challenged as discriminatory are isolated, discrete acts, such as failure to promote.  Amtrak v. Morgan, 536 U.S. 101, 113 (2002).[14]

Here, Plaintiff completed his EEOC Charge Questionnaire on November 23, 2004, and dually filed a Charge of Discrimination with the EEOC and PHRC on January 14, 2005.  There is an open issue as to whether the PHRA and Title VII filing deadline is determined by the completion date of the Charge Questionnaire or

---

[14]    Although the continuing violation theory allows for an exception to the limitations rule, this exception is not implicated here because the adverse employment action upon which Plaintiff's Title VII claim is predicated, "failure to promote," is a discrete act.  Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 483-84 (3d Cir. 1997) (holding failure to promote claim is a discrete instance of discrimination and not susceptible to continuing violation analysis).

the Charge of Discrimination.[15]   However, the Court need not

resolve this issue because under either filing date, the acts of

discrimination at issue fall outside of the statute of

limitations.

Defendant challenges two distinct acts of

discrimination as barred by the statute of limitations: (1)

promotion of Defendant Davenger, known to Plaintiff in "November

or December" 2003;[16] (2) hostile work environment experienced by

_____

[15]   The Supreme Court recently considered whether a
plaintiff's intake questionnaire submitted to the EEOC could
constitute a "charge" in conjunction with a discrimination action
under the Age Discrimination in Employment Act ("ADEA").   29
U.S.C.S. § 621 et seq.   The Court considered the EEOC's
articulated standard for a "charge" - that the filing be
"reasonably construed as a request for the agency to take action
to protect [the employee's] rights or settle a dispute between
the employer and employee."   Fed. Express Corp. v. Holowecki, 128
S. Ct. 1147, 1157-58 (2008).   The Court advised, "documents filed
by an employee with the EEOC should be construed, to the extent
consistent with permissible rules of interpretation, to protect
the employee's rights and statutory remedies."   Id. at 1160.
Thus, in an ADEA case, a questionnaire can constitute a "charge"
if it was reasonably construed as a request for the agency to
take protective action.

There is recent suggestion that the Third Circuit will
extend Holowecki to the Title VII context.   In a non-precedential
opinion, the Third Circuit remanded a Title VII action to the
District Court to examine the plaintiff's intake questionnaire
submitted to the EEOC, and "determine in the first instance what
impact, if any, Holowecki, has on the Title VII claim."   Joseph
v. Commonwealth of Pennsylvania Dept. of Env't Prot., No. 07-
4259, 2009 U.S. App. LEXIS 2559, at *2-3 (3d Cir. February 6,
2009).

[16]   It is unclear whether Plaintiff considers Defendant
Davenger's AEPM promotion as discriminatory to Plaintiff.
Plaintiff's deposition is inconsistent on this question.

Plaintiff from April 8, 1996 (date of hire) through February 1998 (date of promotion to Mechanical Engineer II), the time representing Plaintiff's initial supervision by Defendant McCartney in the Engineering Unit.

To challenge Defendant Davenger's AEPM promotion as discriminatory, Plaintiff would have had to file his PHRC Charge by June 28, 2004, and EEOC Charge by October 26, 2004.[17]

---

See (Pl.'s Dep. 160:13-77)
    Q. Did you think his getting that job was discriminatory in
    any way?
    A. Towards me? No.
    Q. Towards you.
    A. No.

But see (Pl.'s Dep. 168:6-12)
    Q. Do you believe that there was anything discriminatory in
    selecting Mr. Thomas Joseph over you for that airport
    engineering manager's position?
    A. Absolutely.
    Q. What?
    A. Well, the mere fact they chose Mr. Davenger.

    At the summary judgment stage, viewing the facts in the
light most favorable to Plaintiff, the Court construes Defendant
Davenger's AEPM promotion as an alleged discriminatory act.
Importantly, this discriminatory act is discrete, and unrelated
to Plaintiff's failure to promote allegation, which occurred when
his appointment to a separate AEPM position was withdrawn.  The
Court considers that failure to promote claim infra at p. 25-28.

    [17]    This calculation assumes that Plaintiff learned of
Defendant Davenger's promotion to AEPM on December 31, 2003.  In
Plaintiff's deposition, he states that he "believe[s] [Davenger]
got it [the AEPM position] in November or December of '03."
(Pl.'s Dep. 160:21-22).  Viewing the facts in the light most
favorable to Plaintiff, the Court construes this date as December
31, 2003, the latest date on which the statute of limitations
would have begun to run.

To challenge the hostile work environment experienced while working under the supervision of Defendant McCartney in the Engineering Unit, Plaintiff would have had to file his PHRC Charge by August 27, 1998, and EEOC Charge by December 25, 1998.[18]

As detailed above, Plaintiff dually filed a Charge of Discrimination with the EEOC and PHRC on January 14, 2005. Because this date is beyond the limitation periods, as calculated above, Plaintiff's claims under Title VII and the PHRA, predicated upon Defendant Davenger's AEPM promotion and the hostile work environment he experienced from April 8, 1996 through February 1998,[19] are barred by the statute of

---

[18]   This calculation assumes that Plaintiff was promoted from the Engineering Unit, and thus not under the supervision of Defendant McCartney, on February 28, 1998.  In Plaintiff's deposition, he specifies that he moved from the Engineering Unit to the Maintenance Unit in February of 1998; Plaintiff does not provide a more specific date in February.  (Pl.'s Dep. 109:11-13.)  Viewing the facts in the light most favorable to the Plaintiff, the Court construes this date as February 28, 1998, the latest date on which the statute of limitations would have begun to run.

[19]   Plaintiff attempts to breathe new life into his hostile work environment claim by arguing that the statue of limitations should be tolled under the continuing violation theory.  This argument is unavailing.  (Pl.'s Resp. to Def.'s Mot. for Summ. J., pp. 44).

Under the continuing violations theory, "a plaintiff may pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate the act is part of an ongoing practice or pattern of discrimination of the defendant."  Rush v. Scott Specialty Gases, 113 F.3d 476, 481 (3d Cir. 1997).  To prove a continuing violation, a plaintiff must

- 16 -

limitations.

    2.   <u>Title VII and PHRA: Exhaustion Analysis</u>

        Defendants contend that Plaintiff failed to exhaust administrative remedies as to his Title VII and PHRA claims predicated upon <u>race</u> discrimination, <u>retaliation</u>, and acts which occurred after August 30, 2006.  Importantly, in Plaintiff's administrative charge he checked the boxes labeled "national origin," "religion," and "age;" he did not check the other boxes, including the ones labeled "race," and "retaliation."  (Pl.'s Charge of Discrimination available at doc. no. 36, ex. 36).[20]

---

establish that: (1) at least one discriminatory act occurred within the filing period; and (2) the harassment was more than isolated, sporadic acts of intentional discrimination.  Id.  In this evaluation, courts generally consider the subject matter, frequency, and permanence of the discriminatory conduct.  Id. (citing Berry v. Bd. of Supervisors of La. State Univ., 715 F.2d 971 (5th Cir. 1983)).

        Here, at least one discriminatory act did in fact occur within the filing period - specifically, Defendant McCartney's alleged interference with Plaintiff's AEPM promotion, predicating Plaintiff's failure to promote claim.  However, this act of discrimination occurred in April 2004, over seven years after the alleged discrimination in the engineering unit.  More importantly, the failure to promote allegation is factually distinguishable from the general hostile work environment allegedly created by Defendant McCartney during Plaintiff's employment in the engineering unit.  Accordingly, these acts of discrimination are isolated events and thus not subject to the continuing violation theory.  <u>See</u>, <u>e.g.</u>, <u>Bostic v. AT&T of the Virgin Islands</u>, 166 F. Supp. 2d 350, 357 (3d Cir. 2001) (holding continuing violation did not occur where discriminatory allegations related to "different types of conduct").

[20]    Moreover, there is no mention of either race based discrimination, nor retaliation in Plaintiff's intake questionnaire. (Pl.'s intake questionnaire available at doc. no.

Generally, a Title VII plaintiff cannot bring claims in a civil lawsuit that were not first included in an EEOC charge and exhausted at the administrative level.  Burgh v. Borough Counsel of Montrose, 251 F.3d 465, 469 (3d Cir. 2000).  However, where a plaintiff attempts to assert a claim at the district court level which was not raised in the administrative charge, the claim is considered exhausted if it is "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom."  Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996).  Put another way, "the scope of the resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'"  Hicks v. ABT Assoc., Inc., 572 F.2d 960, 966 (3d Cir. 1978) (quoting Ostapawicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)).  In effort to define the scope of a reasonable EEOC investigation, courts have allowed claims not specifically mentioned in the EEOC charge "where there was a close nexus between the facts supporting the claims raised in the charge and those in the complaint."  Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984).

For example, in Hicks, the Third Circuit held that a plaintiff could raise a sex discrimination claim at the district court level, despite the fact that it was not alleged at the

36, ex. 35).

- 18 -

administrative level, because a proper EEOC investigation of the pleaded race discrimination could have reasonably revealed sex discrimination.  572 F.2d 960, 965 (3d Cir. 1978).  In reaching this decision, the Third Circuit noted that "the record contain[ed] sufficient evidence to raise a fair inference that [plaintiff] would have told the EEOC investigator that he believed that sex discrimination was a cause of the disparate treatment alleged in his charge."  Id. at 966-67.[21]

With this framework in place, the Court considers whether the three claims challenged as unexhausted by Defendants were in fact exhausted: (1) race; (2) retaliation; and (3) allegations of discrimination which occurred after the EEOC's final decision on Plaintiff's administrative charge.[22]

---

[21]   Notably, in Hicks there was a question of fact as to whether the EEOC had improperly refused to allow Plaintiff an opportunity to amend the original EEOC charge to add sex discrimination.  572 F.2d at 964.  Here, there is no evidence of agency impropriety.  However, there remains a question as to whether the investigation was reasonable, and more specifically, whether a reasonable investigation would have revealed Plaintiff's race discrimination claim.  Accordingly, the principles articulated in Hicks remain applicable.

[22]   Defendants contend that the EEOC final decision was made known to Plaintiff "on or about" August 30, 2006.  On this date, the EEOC investigator, Evangeline Draper Hawthorne, issued Plaintiff a letter stating "there is insufficient evidence to support [Plaintiff's] allegations of discrimination based upon [Plaintiff's] national origin, age, and religion."  However, the letter allowed Plaintiff an opportunity to respond within ten days of issuance to supplement the record.  (Def.'s Mot. for Summ. J., ex. 37)

Thus, the Court will not construe this letter as a

First, although Plaintiff did not check the "race" box on the EEOC charge form, there is an open question as to whether a reasonable evaluation of Plaintiff's national origin and religious based discrimination claims would have raised the race discrimination issue.  While the Third Circuit has not directly addressed this set of facts, other Circuits have faced this inquiry and held both ways, highlighting the sensitivity of the issue.

For example, the Ninth Circuit held that a plaintiff could not extend her properly exhausted sex and national origin discrimination claim to include race, color, and religious discrimination, because the plaintiff relied upon the same facts to support all claims and failed to allege facts to put the EEOC on notice of these additional claims.  Shah v. Mt. Zion Hosp. & Med. Ctr., 642 F.2d 268, 272 (9th Cir. 1981).  In contrast, the Sixth Circuit noted that a plaintiff's race discrimination claim could have reasonably grown from plaintiff's properly exhausted national origin discrimination claim because the plaintiff's "Asian race and Indonesian ancestry are closely related and may have both contributed to any discrimination he suffered."  Ang v.

---

final decision.  Rather, the Court will construe the Dismissal and Notice of Rights, issued on September 29, 2006, by Marie M. Tomasso, District EEOC Director, as the date that the final decision of the EEOC was rendered.  On this date, the EEOC issued its determination that it "is unable to conclude [Employer] complied with the statutes." and gave Plaintiff notice of his right to sue.  (Def.'s Mot. for Summ. J., ex. 39).

Proctor and Gamble Co., 932 F.2d 540, 546 (6th Cir. 1991).

On these facts, the Court finds that Plaintiff's race discrimination claim could have reasonably arisen from an EEOC investigation of his properly exhausted national origin and religious claims.  Accordingly, Plaintiff's race discrimination claim is properly exhausted.

Second, on the other hand, a reasonable evaluation of Plaintiff's administrative charge would not have revealed Plaintiff's retaliation claim.  The Third Circuit has rejected a per se rule that all claims of retaliation are ancillary to the filing of an EEOC complaint, and thus, the Court is required to closely scrutinize the record to determine whether retaliation falls within the scope of the actual EEOC investigation. Robinson v. Dalton, 107 F.3d 1018, 1024 (3d Cir. 1996).  To establish a prima facie case of retaliation in such a case, a plaintiff must show: (1) he engaged in a protected activity under Title VII; (2) the employer took an adverse action against him; and (3) there was a causal connection between the employee's participation in the protected activity and the adverse employment action.  Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 320 (3d Cir. 2008).

Here, Plaintiff failed to check the box labeled "retaliation" in his administrative charge.  However, more importantly, nowhere in Plaintiff's administrative charge does

- 21 -

Plaintiff allege any facts which would support a retaliation claim.  Specifically, he does not allege that he engaged in any sort of protected conduct, or that Defendants engaged in any sort of retaliatory animus.  Accordingly, Plaintiff's retaliation claim is not reasonably within the scope of his administrative charge, and thus not exhausted.

Finally, the acts of discrimination alleged to have occurred <u>after</u> the closure of Plaintiff's EEOC investigation are not properly exhausted.  Where acts of discrimination or retaliation occur subsequent to the filing of an administrative charge, the complainant is not required to file a new administrative charge provided that: (1) the subsequent acts occur while an investigation is still pending; and (2) the subsequent acts are <u>reasonably related</u> to the acts underlying the earlier finding.  <u>Waiters v. Parsons</u>, 729 F.2d 233, 237 (3d Cir. 1984).  However, where no administrative investigation is pending at the time of the subsequent acts, the complainant must file a new administrative charge prior to filing suit.  <u>See</u>, <u>e.g.</u>, <u>Crumpton v. Potter</u>, 305 F. Supp. 2d 465, 476 (E.D. Pa. 2004) (finding that plaintiff failed to exhaust administrative remedies where he alleged denial of overtime occurred on a date after the final decision of the EEOC).

Here, the EEOC issued a "Dismissal and Notice of Rights" on September 29, 2006, which indicated, "the EEOC is

closing its file on this charge." (Def.'s Mot. for. Summ. J., ex. 39).  In Plaintiff's complaint, he alleges the following instances of discriminatory conduct which occurred post September 29, 2006: (1) Plaintiff "received a memorandum of disciplinary action dated November 10, 2006 from Defendant Davenger . . . for "not providing a report of a meeting;"[23] and (2) Defendant Davenger revoked Plaintiff's internet access on December 7, 2006. Because no administrative charge was pending at the time that these instances of alleged discriminatory conduct occurred, Plaintiff was required to file a new administrative charge with respect to these claims.  Consequently, because an administrative charge was not pending at the time that these alleged discriminatory acts occurred, the Court need not reach the issue as to whether these acts are "reasonably related" to the acts underlying the earlier filing.  Accordingly, Plaintiff's claims based upon these alleged discriminatory acts are not properly exhausted.

3.  Title VII and PHRA:  Substantive Analysis

The Court turns to the substantive evaluation of Plaintiff's remaining, properly exhausted, Title VII and PHRA claims: race, national origin, and religious based

---

[23]     Following a disciplinary hearing, on January 23, 2007, Plaintiff was issued a one-day suspension, without pay, in conjunction with this incident.  (Def.'s Mot. for. Summ. J., ex. 41).

discrimination.  Plaintiff proffers the following indirect evidence[24] of such discrimination: (a) denial of second AEPM promotion; (b) his 2004 failure of the "In-Basket Examination;" (c) Plaintiff's one-day suspension issued on January 23, 2007, as punishment for Plaintiff's failure to provide meeting minutes upon supervisor's request (Def.'s Mot. for. Summ. J., exs. 40-41); and (d) revocation of Plaintiff's internet privileges. However, as noted above, because Plaintiff's one-day suspension and revocation of internet privileges occurred after the closure of the administrative proceedings, these alleged discriminatory acts were not properly exhausted and cannot serve as predicate discriminatory acts for his Title VII and PHRA claims. Accordingly, the Court will consider Plaintiff's race, national origin, and religious discrimination claims predicated upon Defendants' failure to promote Plaintiff to the second AEPM promotion and Defendants' dissemination of the of "In-Basket Examination."

Importantly "[c]laims under the PHRA are interpreted coextensively with Title VII claims." Atkinson v. Lafayette College, 460 F.3d 447, 454 n.6 (3d Cir. 2006). As such, the Court's holding with regard to Plaintiff's Title VII claims will

---

[24]    Plaintiff does not claim that he has direct evidence of discrimination. Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005) (explaining that without direct evidence of discrimination, a plaintiff must proceed under the McDonnell Douglas framework).

also apply to Plaintiff's claims under the PHRA.

     a.  <u>Failure to Promote</u>

        An employee alleging a failure to promote claim under Title VII must proceed upon the three-step burden shifting analysis set forth in McDonnell Douglas Corp. v. Green.  411 U.S. 792 (1973).  First, a plaintiff must establish a prima facie case for discrimination.  Id. at 802.  That is, Plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for the position in question; (3) he was rejected; and (4) after the rejection, the position remained open and the employer continued to seek applications from persons of Plaintiff's qualifications for the position.  Bray v. Mariott Hotels, 110 F.3d 986, 990 (3d Cir. 1997) (citing McDonnel Douglas Corp., 411 U.S. at 802).

        Establishing a prima facie case creates the presumption of unlawful discrimination.  <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993).[25]  Then, the burden of production shifts to defendant to set forth a legitimate, non-discriminatory reason for its action.  <u>Id.</u>  Notably, the Third Circuit has held that this is a "relatively light burden" because the defendant "need

---

    [25]    Although the <u>McDonnell Douglas</u> framework shifts the burden of production to defendant, the ultimate burden of persuasion always remains with plaintiff.  <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).

- 25 -

not prove that the tendered reason <u>actually</u> motivated its
behavior" but only that it may have.  <u>Fuentes v. Perskie</u>, 32 F.3d
759, 769 (3d Cir. 1994).

Upon defendant advancing such a reason, the presumption
of unlawful discrimination "'is rebutted' . . . and 'drops from
the case.'"  <u>St. Mary's Honor Ctr.</u>, 509 U.S. at 507 (quoting
<u>Burdine</u>, 450 U.S. at 255 & n.10 (internal citation omitted)).
Then, plaintiff must be given the opportunity to "show by a
preponderance of the evidence that the employer's explanation is
pretextual."  <u>Fuentes</u>, 32 F.3d at 763; <u>see also</u> <u>id.</u> at 764
(noting that a Title VII plaintiff may not "avoid summary
judgment simply by arguing that the factfinder need not believe
the defendant's proffered legitimate explanations").  To
demonstrate pretext, plaintiff must provide evidence that would
allow a fact finder reasonably to "(1) disbelieve the employer's
articulated legitimate reasons; or (2) believe that an invidious
discriminatory reason was more likely than not the motivating or
determinative cause of the employer's action."  Id. at 764.

Here, it is undisputed that Plaintiff can establish the
first three elements of a prima facie case for unlawful
discrimination based his race, national origin, and religion.
Plaintiff is a member of a protected class (race - Middle Eastern
(Asian); national origin - Iranian; religion - Muslim), was
qualified for the AEPM position, (Pl.'s Dep. 181:9-16) and was

rejected.  (Id. at 190:4-9).  However, Plaintiff is unable to establish the final element of the prima facie case - that after the rejection, the position remained open and the employer continued to seek applications from persons of Plaintiff's qualifications for the position.  Bray, 110 F.3d at 990 (citing McDonnel Douglas Corp., 411 U.S. at 802).  Rather, Defendants determined that the AEPM position was not appropriate for the Planning Unit, as Plaintiff admits, terminated any further efforts to fill the AEPM position.  (Pl.'s Dep. 190:10-14).

Accordingly, Plaintiff fails to establish a nexus between his protected class and Defendants' decision to withdraw Plaintiff's promotion.  See e.g., Sarullo v. United States Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003) (plaintiff failed to establish prima facie case where there was no connection between plaintiff's membership in the protected class and the employer's decision not to rehire him).  Because Plaintiff cannot establish a prima facie case, Plaintiff's Title VII claim on this basis must fail.

### b.   "In-Basket Examination"

In challenging an assessment as discriminatory, Plaintiff need not allege or prove discriminatory intent, but rather need only show a discriminatory effect of Defendants' examination.  Douglas v. Southeastern Pennsylvania Transp. Auth., 479 F.3d 232, 239 (3d Cir. 2007) (citing Griggs v. Duke Power,

401 U.S. 424 (1971) (classifying this challenge as a "disparate impact" case)).  The Griggs Court articulated a two step process for disparate impact cases: (1) a plaintiff must prove the challenged policy discriminates against members of a protected class; and (2) if a plaintiff proves such discrimination, defendant can overcome the showing of disparate impact by proving a "manifest relationship" between the policy and job performance. Id.

Here, Plaintiff fails to establish the "In-Basket Examination" has a discriminatory impact upon members of a protected class.  Although Plaintiff contends that the evaluation is discriminatory against foreign persons who speak English as their second language, he provides no facts to support this assertion.  Because the Court is "not compelled to accept unsupported conditions and unwarranted inferences," Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007), in the absence of statistics or facts substantiating a lesser passage rate by members of a Title VII protected class, Plaintiff's Title VII claim on this basis must fail.

    B.    Civil Rights Violations for Municipal Liability under §
          1983

       A municipality is liable under 42 U.S.C. § 1983 when a plaintiff can demonstrate that the municipality itself, through

the implementation of a municipal policy or custom, causes a constitutional violation.  Colburn v. Upper Darby Twnshp., 946 F.2d 1017, 1027 (3d Cir. 1991) (citing Monell v. New York Dep't of Social Servs., 436 U.S. 658 (1978)).  Liability will be imposed when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the "moving force" behind the constitutional tort of one of its employees.  Id. (citing Polk County v. Dodson, 454 U.S. 312 (1981)).  Liability cannot be predicated, however, on a theory of respondeat superior or vicarious liability.  Id. (citing Monell, 436 U.S. at 693-94).

Plaintiff alleges that Defendant City of Philadelphia is liable for under 42 U.S.C. § 1983 for constitutional violations caused by the following: (1) the wrongful, discriminatory conduct of Defendants McCartney and Davenger; and (2) the implementation of a policy, practice, or custom which failed to properly train employees to abstain from discriminatory conduct, and discipline or sanction employees for engaging in and/or concealing discriminatory conduct.  Both bases are unavailing.

First, because a municipality cannot be held liable under respondeat superior, even assuming that Defendants McCartney and Davenger engaged in discriminatory conduct, Defendant City of Philadelphia is not liable for such conduct as

a matter of law.  <u>See</u> <u>e.g.</u>, <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 849 (3d Cir. 1990) (noting that liability of government entity may not be proven under respondeat superior doctrine); <u>Watson v. Abington Twnsp.</u>, 478 F.3d 144, 155 (3d Cir. 2007) (same).

Second, Plaintiff has failed to establish the existence of a policy or custom which violates Plaintiff's constitutional rights, or is the "moving force" behind the constitutional torts of its employees.  Beyond the assertions in his complaint, the only evidence of such a policy is Plaintiff's deposition testimony contending that the mayor refused to personally "len[d] an ear" to Plaintiff's case.  (Pl.'s Dep. 279:4-6).[26]  In the absence of further evidence establishing a municipal policy which violates constitutional rights, Plaintiff's claim on this basis must fail.[27]

---

[26]    In his deposition, Plaintiff clarified the policy which serves as the basis of his § 1983 action against the City of Philadelphia:

> Q.  Is that the policy you're talking about here, that the mayor wouldn't talk to you?
> A.  Exactly.
> Q.  About your individual discrimination claim.
> A.  Exactly.

(Pl.'s Dep. 278:19-24)

[27]    Count Six of Plaintiff's complaint asserts First and Fourteenth Amendment violations, pursuant to 42 U.S.C. § 1983, against Defendant City of Philadelphia <u>only</u>, and not against Defendants McCartney and Davenger in their individual capacities.

      C.   First Amendment Retaliation under § 1983

A public employee's First Amendment retaliation claim is evaluated under a three-step process.  Green v. Phila. Hous. Auth., 105 F.3d 882, 885 (3d Cir. 1997).  First, a plaintiff must show that the activity in question was protected.  Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993).  Second, a plaintiff must demonstrate his interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees.  Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001) (citing Pickering v. Bd. of Educ., 391 U.S. 563 (1968)).  Third, a plaintiff must show that the protected activity was a substantial or motivating factor in the alleged retaliatory action.  Id. (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)).  Finally, the public employer can rebut the claim by demonstrating that "it would have reached the same decision . . . even in the absence of the protected conduct."  Id.

In determining whether Plaintiff engaged in protected speech to satisfy the first prong of the Green test, the Court's analysis is governed by the Supreme Court's decision in Garcetti v. Ceballos, 547 U.S. 410 (2006), and related Third Circuit jurisprudence.  The Garcetti court held that "when public employees make statements pursuant to their official duties, the

- 31 -

employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."[28]  Id. at 421. Following Garcetti, the Third Circuit has held that "[a] public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen; (2) the statement involved a matter of public concern; and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made . . . ." Reilly v. City of Atlantic City, 532 F.3d 216, 228 (3d Cir. 2008) (quoting Hill v. Borough of Kutztown, 455 F.3d 225, 241-42 (3d Cir. 2006)).

Under Garcetti and its progeny, the threshold question is whether Plaintiff's communications to his supervisors were made in his capacity as a private citizen, or pursuant to his official duties as an employee.  See Foraker v. Chaffinch, 501 F.3d 231, 243 (3d Cir. 2007) ("Because we agree with the District Court that [plaintiffs] were acting pursuant to their job duties when they made their complaints up the chain of command . . . we need not examine whether their speech passes the remainder of the test . . . .").

---

[28]     In so holding, the Garcetti court refined the First Amendment analysis set forth in Pickering v. Board of Ed. of Twp. High School Dist. 205, Will Cty., 391 U.S. 563 (1968).

Here, Plaintiff avers that he engaged in protected activity by communicating complaints to his supervisors regarding the contractors and consultants with whom he worked; specifically Plaintiff notes that the contractors and consultants work "was counted against [his] ability to manage [] or coordinate them." (Pl.'s Dep. 266:20-24).[29]  Plaintiff claims that Defendants retaliated against him for engaging in this conduct.[30]

As Plaintiff concedes, the expression at issue related to Plaintiff's responsibilities on the job.  (Pl.'s Dep. 265:7-9).  Plaintiff contends that his complaints regarding the contractors' misconduct were triggered by Plaintiff's belief that such misconduct was a poor reflection on Plaintiff's management abilities.  (Id. at 566:20-24).  Consequently, Plaintiff spoke out of concern for his position as an employee, rather than to further a broader public concern.  Accordingly, under Garcetti, he was not speaking "as a citizen" when he made this statement, and thus, as a matter of law, the statements are not protected

---

[29]    In addition, Plaintiff avers that he communicated facts to his supervisors relating to an alleged FBI investigation of the Airport.  (Id. at pp. 267-269).  This is not a statement which could form the basis of retaliation complaint.  He merely mentions an ongoing investigation; he does not attempt to initiate an investigation.

[30]    The specific form of retaliation that Plaintiff avers to have experienced as a result of this conduct is unclear.  In Plaintiff's deposition, Defendant asked Plaintiff to indicate "what actions were taken against you because you expressed your opinion in that regard?"  (Pl.'s Dep. 268:14-16).  Plaintiff responded, "I was not liked.  I was disliked."  (Id. at 17).

speech.  See, e.g., Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006) (holding that communicating complaints regarding hostile, intimidating, and oppressive action of employees are not protected speech when reported pursuant to his official duties).


IV.  CONCLUSION

        For the reasons set forth above, Defendants' Motion for Summary Judgment will be granted.


        An appropriate order follows.